IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-0305-MSK

**MATTHEW DONALD LEROY SMITH,**

 Plaintiff,

*v.*

**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**

 Defendant.

---

**OPINION AND ORDER REVERSING THE COMMISSIONER'S DECISION**

---

 **THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 14**), the Defendant's Response (**# 15**), and the Plaintiff's Reply (**# 16**). For the following reasons, the Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I. JURISDICTION

 The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II. BACKGROUND

**A. Procedural History**

 Matthew Smith seeks judicial review of a final decision by the Commissioner denying his claims for supplemental security income (SSI) under the Social Security Act. In October 2007, Mr. Smith filed for SSI, claiming he became disabled in October 2006. Tr. at 322–24. Though the Appeals Council twice remanded the ALJ's decision for further proceedings, then denied

1

review of the ALJ's decision dated July 29, 2016, which became the final decision of the Commissioner.

**B.    Factual Background**

At the time of his alleged onset of disability in 2006, Mr. Smith was 31 years old. Tr. at 322. He was previously employed as a dishwasher and a warehouse supervisor. Tr. at 382. The Court summarizes only the evidence relevant to Mr. Smith's mental impairments, noting that there is no opinion from any treating source.

In January 2008, Mr. Smith saw Dr. Richard Madsen, a consulting examiner, for a psychological evaluation. Tr. at 568–70. Dr. Madsen observed Mr. Smith to be oriented to person, place, and time, and able to recall the date and the name of the president. Tr. at 569. He found Mr. Smith's affect to be anxious and depressed but nonpsychotic. Tr. at 569. Mr. Smith was able to recall personal information and count accurately, but his ability to perform arithmetic functions in his head was impaired; Dr. Madsen observed his short-term auditory memory, intellectual functioning, and abstract reasoning ability to be average. Tr. at 569–70. Dr. Madsen found his persistence and pace to be adequate. Tr. at 570. Based on his examination, Dr. Madsen diagnosed Mr. Smith as suffering from major depression, recurrent and moderate without psychotic features, and personality disorder. Tr. at 570. He concluded that Mr. Smith's cognitive functioning was average although he had some difficulty with concentration, and that his depression interfered with his ability to focus and his energy level. Tr. at 570. As a result, Mr. Smith's ability to maintain a regular work schedule "would be impaired." Tr. at 570.

In October 2009, Dr. Jose Vega also performed a consultative examination. Tr. at 634–38. Dr. Vega observed Mr. Smith to be oriented to time, place, and person, with a blunted affect and depressed mood. Tr. at 636. Mr. Smith could identify the president and Colorado governor

but misidentified the vice president. Tr. at 636. He had some difficulty spelling and performing numerical exercises correctly. Tr. at 636–37. Mr. Smith showed some impairment with short-term memory, recalling three out of five words after five minutes. Tr. at 637. Dr. Vega observed that although Mr. Smith recognized what constitutes socially appropriate behavior but responded in ways that indicate poor judgment. Tr. at 637. His appearance was "minimally adequate". Tr. at 637. Based on his examination, Dr. Vega diagnosed Mr. Smith as suffering from a mood disorder and pain disorder associated with psychological factors. Tr. at 638. He opined that Mr. Smith had problems with sustained concentration and persistence, as well as impulse control and social interaction with others. Tr. at 637. As a result, Mr. Smith would have problems maintaining employment "for any extended period of time." Tr. at 638.

Dr. Vega also completed a mental RFC evaluation. Tr. at 632–33. He opined that Mr. Smith's understanding and memory ranged from moderately limited in terms of understanding and remembering simple instructions to markedly/extremely limited in understanding and remembering detailed instructions. Tr. at 632. With regard to concentration and pace, Dr. Vega stated that he was moderately limited in carrying out simple instructions but markedly to extremely limited in all other respects. Tr. at 632. As to social interaction, Dr. Vega opined that Mr. Smith was markedly to extremely limited in all respects. Tr. at 633. And as to adaptation to changes in the workplace, Dr. Vega again stated that Mr. Smith was markedly to extremely limited in all respects. Tr. at 633.

Dr. Madsen performed another consultative examination in July 2011. Tr. at 641–46. Dr. Madsen again observed Mr. Smith to be oriented to person, place, and time, and able to recall the date and the name of the president. Tr. at 644. He found Mr. Smith's affect to be blunted and consistent with a depressed mood. Tr. at 644. His thought content was logical and relevant, and

3

his speech was slow, quiet, and without energy.  Tr. at 644.  Mr. Smith was able to recall personal information and count accurately, but his ability to perform arithmetic functions in his head was again impaired.  Tr. at 645.  This time, Dr. Madsen observed his short-term auditory memory to be impaired and his intellectual functioning to be in the low average to borderline range, although Mr. Smith's abstract reasoning ability remained functional.  Tr. at 645.  Dr. Madsen found his persistence adequate, but his pace was slow this time.  Tr. at 645.  Based on his examination, Dr. Madsen diagnosed Mr. Smith as suffering from major depressive disorder, recurrent and moderate to severe with psychotic features at times, panic disorder with agoraphobia, posttraumatic stress disorder, and developmental learning disorder.  Tr. at 645.  He concluded that Mr. Smith's depression and panic disorder was likely keeping him from seeking and/or keeping employment, and that his cognitive functioning indicates he may have a learning disability.  Tr. at 646.  As a result, Dr. Madsen again opined that Mr. Smith's ability to perform work-related activities was impaired.  Tr. at 646.

In conjunction with the second consultative examination, Dr. Madsen completed a medical source statement indicating that Mr. Smith's ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions was mildly limited.  Tr. at 648.  However, Dr. Madsen opined that these abilities were markedly limited with regard to complex instructions and work-related decisions.  Tr. at 648.  Dr. Madsen found Mr. Smith moderately limited in social interactions.  Tr. at 649.

In January 2008,   years prior to the examination by Dr. Vega and second examination by Dr. Madsen, Dr. Mark Suyeishi, a state-agency non-examining consultant, reviewed the medical record and completed a mental residual functional capacity (RFC) assessment and psychiatric review technique (PRT).  Tr. at 575–92.  He opined that Mr. Smith was not significantly limited

4

in remembering locations and work procedures, and understanding and remembering simple instructions. Tr. at 575. He considered Mr. Smith moderately limited in understanding and remembering detailed instructions. Tr. at 575. With regard to concentration and persistence, Dr. Suyeishi stated Mr. Smith was not significantly limited in carrying out simple instructions, sustaining an ordinary routine, and making simple work-related decision, but was moderately limited in carrying out detailed instructions, maintaining attention for extended periods, performing activities within a schedule, working in proximity to others without distraction, and completing a normal workweek without interruptions from psychological symptoms. Tr. at 575–76. As to social interaction, Dr. Suyeishi considered Mr. Smith not significantly limited in asking simple questions or maintaining socially appropriate behavior, but moderately limited in public interaction, accepting instructions and criticism, and getting along with peers without distraction. Tr. at 576. And as to adaptation to changes in the workplace, Dr. Suyeishi found no limitations. Tr. at 576. In making these findings, Dr. Suyeishi gave Dr. Madsen's first report full weight as it was "supported by objective findings." Tr. at 577. In the PRT, Dr. Suyeishi found moderate limitations in social functioning and maintaining concentration, persistence, and pace, but no limitations in daily activities or episodes of decompensation. Tr. at 589.

Considering this evidence, in July 2016, the ALJ issued a decision unfavorable to Mr. Smith. Tr. at 11–35. At step one, he found that Mr. Smith had not engaged in substantial gainful activity since October 16, 2007. Tr. at 16. At step two, the ALJ found that Mr. Smith had the following severe impairments: history of a right shoulder injury, arthralgia, depression, anxiety, history of marijuana abuse, a non-specific pain disorder, post-traumatic stress disorder, obsessive compulsive disorder, and a mood disorder. Tr. at 17. At step three, he found that Mr. Smith did not have an impairment that met or medically equaled the presumptively disabling conditions

5

listed in 20 C.F.R. Part 404, Appendix 1.  Tr. at 17.  The ALJ further found that Mr. Smith had the residual functional capacity (RFC) to perform light work with the following limitations: he can never climb ladders, ropes, or scaffolds, but he can frequently climb ramps and stairs, balance, stoop, and crouch; he can occasionally kneel and crawl; he can frequently reach with his right upper extremity, but only occasionally reach overhead; he can frequently handle, finger, and feel with his right upper extremity; he must avoid frequent exposure to extreme cold, frequent use of moving machinery, and frequent exposure to unprotected heights; he is limited to work consisting of only simple, routine, and repetitive tasks, and to work that requires minimal math, reading, and writing skills; he can maintain sufficient concentration and attention for extended periods of two-hour segments during a normal workday, but only in work that consists of no more than simple, routine, repetitive tasks; he is limited to working in a low-stress work environment, not requiring him to cope with work-related circumstances that could be dangerous to himself or others; he is limited to work that requires no more than frequent interaction with the public and coworkers, and to work that requires no more than occasional supervision.  Tr. at 19–20.

In formulating this RFC, the ALJ gave little weight to Dr. Madsen's opinions, little to no weight to Dr. Vega's opinions, and did not address Dr. Suyeishi's opinion, instead stating that the state-agency opinions "are internally consistent and consistent with the evidence as a whole."  Tr. at 23–25.  At step four, the ALJ found that Mr. Smith had no past relevant work.  Tr. at 25.  At step five, the ALJ found that jobs that Mr. Smith can perform exist in significant numbers in the national economy, specifically jobs of burr grinder, bone picker, and bottling line attendant.  Tr. at 26.

### III.  STANDARD OF REVIEW

Although the Court's review is de novo, the Court must uphold the Commissioner's

decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, but it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall*, 561 F.3d at 1052.

## IV. DISCUSSION

Initially, Mr. Smith argued that the ALJ erred in evaluating all medical opinions, but withdrew his arguments as to the opinions of Drs. Moser and Malmstrom in his Reply brief. Thus, he continues to object to the weight given by the ALJ to the opinions of Dr. Suyeishi, Dr. Madsen, and Dr. Vega

Ordinarily, a treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). But if there is no controlling opinion, the ALJ must assign comparative weight of any conflicting opinions offered by consulting examiners in light of the following factors::

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). A consulting examiner's opinion is presumptively entitled to more weight than an opinion derived from a review of the records.

7

*Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The ALJ may dismiss or discount an examining physician's opinion but she must do so based on the foregoing factors and must provide specific, legitimate reasons for doing so.. *Id.*

On appeal, Mr. Smith argues that the ALJ neglected to evaluate and weigh Dr. Madsen's second opinion, improperly rejected Dr. Vega's opinion, and did not conform the RFC to Dr. Suyeishi's opinion even though he stated that such opinion is consistent with the record as a whole.

## A. Dr. Madsen

As discussed above, Dr. Madsen submitted two opinions based upon two examinations conducted three years apart. In this first opinion, he found that Mr. Smith had some difficulty with concentration and ability to focus, resulting in an impaired ability to maintain a regular work schedule. In his second opinion, he found that Mr. Smith had below-average intellectual functioning, slow pace, and an impaired ability to perform arithmetic. He diagnosed Mr. Smith as suffering from depressive disorder and panic disorder, which, he opined, led to an impaired ability to perform work-related activities.

The ALJ gave one of Dr. Madsen's opinions little weight but neither identified which opinion was evaluated nor expressly stated that both opinions were reviewed and considered:

> Ultimately, he opined that the claimant's ability to maintain a regular work schedule, focusing and concentrating on work, relating to peers, coworkers and supervisors and the general public would be impaired, but he would be [able to] handle his own funds. Dr. Madsen did not provide a detailed vocationally based assessment of the claimant's limitations, but simple[y] stated that his ability to function was "impaired" (Exhibit C4F) [the first opinion]. This brief conclusion is not consistent with the claimant's examination results. Dr. Madsen assessed an average level of cognitive functioning, with intact memory, and logical thoughts. His social skills were intact and the content of his thoughts were relevant. Dr. Madsen's assessment is also inconsistent with the lengthy treatment reports described above, that clearly show his condition remained well-controlled with medication . . . . Therefore, the undersigned gave little weight to Dr. Madsen's opinions.

8

Tr. at 23–24. Mr. Smith contends that this summary indicates that the ALJ only considered the first opinion.

The Court agrees. It appears that the ALJ evaluated Dr. Madsen's first opinion. No reference is made to the second opinion, particularly the assessment of below-average level of cognitive functioning and an impaired short-term auditory memory. Tr. at 645. The Commissioner argues that even if the ALJ disregarded Dr. Madsen's second opinion, the error is harmless because the RFC determination is consistent with the second opinion.

The Court agrees with this as well. The substantive differences between Dr. Madsen's first and second opinions relate to Mr. Smith's intellectual-functioning ability, short-term auditory memory, pace, and diagnoses. The second opinion states that Mr. Smith is only mildly limited in understanding and processing simple instructions and decisions, moderately limited in social interaction, and markedly limited in understanding and processing complex instructions and decisions. Tr. at 648–49. Regardless of whether the ALJ intended it, the RFC accounts for these limitations by restricting Mr. Smith to simple, routine, and repetitive tasks, concentration periods of no longer than two hours at a time and moderate limitation in social interaction. Thus, although the ALJ may not have expressly considered Dr. Madsen's second opinion, the error is harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012).

**B. Dr. Vega**

Dr. Vega, also a consulting examiner, opined that Mr. Smith had some impairment in short-term memory, appeared to show poor judgment, and showed problems with sustained concentration and social interaction. In addition, Dr. Vega stated in his RFC evaluation that Mr. Smith was moderately limited in understanding and remembering and carrying out simple

9

instructions, but markedly to extremely limited in all other aspects of concentration/persistence and social interaction.

With regard to Dr. Vega, the ALJ stated:

> The undersigned gives little to no weight to Dr. Vega's non-specific opinion of mood disorder, as well as his references to the claimant's physical abilities, as he performed a single mental evaluation at the behest of the claimant's representative, is not a treating source, nor is he a medical doctor. In addition, Dr. Vega based his entire opinion on the subjective reports provided by the claimant. No evidence was provided to support or corroborate Dr. Vega's opinion. As noted above, the claimant testified that he had stopped consuming marijuana for many "years" prior to the hearing. In addition, as described previously, the claimant continually described stable moods and improved mental health while he maintained his medication regime. He was able to stop his counseling therapy, which he could have returned to if he needed the support. Therefore, the undersigned gave little weight to Dr. Vega's opinions.

Tr. at 24. Mr. Smith argues that the ALJ gave insufficient reasons for rejecting Dr. Vega's opinion. The Commissioner responds that even if Mr. Smith were correct, *some* of the ALJ's reasoning is supported by the record, rendering remand unnecessary.

There are a number of problems with the ALJ's rationale for rejecting Dr. Vega's opinion. First, it is improper to reject a consulting examiner's opinion because it was sought or obtained by the claimant. *Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014). Second, the fact that Dr. Vega is not a treating source is irrelevant because there are no opinions by treating sources. Thus, Dr. Vega's opinion must be compared with all other opinions to determine its relative weight. In that regard, the statement that there is no evidence to corroborate or support Dr. Vega's opinion is inaccurate. Both of Dr. Madsen's opinions are consonant with Dr. Vega's conclusions is numerous respects. Third, Dr. Vega is a psychologist and thus an acceptable source, so rejection or discounting of his opinion because he is not a medical doctor was improper. Fourth, the record does not support the ALJ's finding that Dr. Vega based his opinion only on Mr.

10

Smith's subjective reports. To the contrary, Dr. Vega followed what appears to be the usual template for a consultative exam, first recounting the claimant's subjective reports and then conducting a mental status examination, for which he gave objective findings. Finally, the significance of Mr. Smith's testimony that he stopped using cannabis years prior to the hearing is unstated. The attenuated history of this case and examinations over and extended time period (the hearing occurred almost six years after Dr. Vega rendered his opinion) could well incorporate times when Mr. Smith used marijuana and when he did not.

Thus, the Court is left with the ALJ's statement that Dr. Vega's opinion is contradicted by the record showing that Mr. Smith's mental health was stable when he maintained his medication regime. This statement reflects consideration of one of the regulatory factors — consistency between the opinion and the record as a whole — but it is entirely conclusory. It offers no specific reference to the record that contradicts Dr. Vega's opinion at the time it was rendered, nor does it point to portions of the record reflecting a change in Mr. Smith's condition after Dr. Vega's opinion. *See Chapo v. Astrue*, 682 F.3d at 1291.

Finding no justification for the weight given to Dr. Vega's opinion, the Court finds that the ALJ erred in its evaluation. This error is not harmless because Dr. Vega's opinion that Mr. Smith is moderately limited in understanding and carrying out simple instructions is not reflected in the RFC. Although the RFC limits Mr. Smith to simple, routine, and repetitive tasks, it goes no further to address moderate limitations in these areas.

## C. Dr. Suyeishi

Dr. Suyeishi, a state-agency reviewing physician, also found moderate limitations in some of Mr. Smith's mental functions. The ALJ did not directly refer to Dr. Suyeishi's opinion; he merely stated that his opinion was internally consistent and consistent with the evidence as a

whole. Tr. at 25. Mr. Smith argues that the ALJ's RFC determination did not account for all of the limitations Dr. Suyeishi found. The Commissioner maintains that it was proper for the ALJ to adopt social interaction limitations that fell between Dr. Suyeishi's more restrictive opinion and the other physicians' less restrictive opinions.

An ALJ cannot, without explanation, include in the RFC limitations assessed by a physician and reject other limitations assessed by the same physician. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996). The RFC here is fairly harmonious with Dr. Suyeishi's limitations; the only limitations not clearly addressed are Dr. Suyeishi's findings that Mr. Smith is moderately limited in his ability to work in proximity to others without distraction, to interact appropriately with the general public, and to get along with peers without exhibiting behavioral extremes. Tr. at 575–76. The ALJ determined Mr. Smith was limited to work requiring no more than frequent interaction with the public and coworkers. Tr. at 19–20. Contrary to Mr. Smith's characterization, Dr. Suyeishi did not opine that he *must not* have frequent interaction with coworkers and the public — he opined that Mr. Smith is moderately limited in such interaction. By limiting Mr. Smith to frequent interaction, as opposed to constant interaction, the ALJ accounted for Dr. Suyeishi's moderate limitation in this regard.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED AND REMANDED** for proceedings consistent with this opinion.   Judgment shall enter in favor of Mr. Smith.

Dated this 1st day of December, 2017.

**BY THE COURT:**

Marcia S. Krieger
United States District Court